FILED
2005 Nov-10 PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| THERON OLIVER,               } | |
| } | |
|     Plaintiff,             } | |
| } | CIVIL ACTION NO. |
| v.                           } | 04-AR-2684-M |
| } | |
| THE COCA-COLA COMPANY and    } | |
| BROADSPIRE SERVICES, INC.,   } | |
| } | |
|     Defendants.            } | |

**<u>MEMORANDUM OPINION</u>**

In response to this court's memorandum opinion of October 21, 2005, now published as *Oliver v. The Coca-Cola Company*, ___ F. Supp. 2d ____ (N.D. Ala. 2005), plaintiff, Theron Oliver ("Oliver"), and defendant, The Coca-Cola Company ("Coca-Cola"), have been unable to agree upon the amount of the disability benefits owed Oliver, plus any interest due thereon. Instead, the two parties have filed competing briefs and evidentiary materials, putting forward their respective rationales and computations for the entry of a final judgment. This opinion is, then, the necessary sequel to the opinion of October 21, 2005.

Oliver interprets Coca-Cola's Long-Term Disability Plan ("the Plan") to entitle him, beginning on April 18, 2002, to a monthly payment of 60% of his "Average Compensation". He says that his "Average Compensation" was $4,190.12. Using these basic alleged facts, Oliver computes his total unpaid benefits as $169,699.72, upon which he claims prejudgment interest at an annual rate of 18%,

for a total proposed final judgment of $251,832.10. Oliver recognizes a partial offset to reflect the disability benefits he received from Social Security, but he claims that the Plan places a floor or guarantee of 60% of his "Average Compensation" as the disability payment from Coca-Cola without regard to any disability benefits he received from other sources.

On the other hand, Coca-Cola says that Oliver's "Average Compensation" was not $4,190.12, as Oliver claims, but was $4,081.46, a figure it supports with the affidavit of Barbara Gilbreath, Director of Global Employee Benefits and Programs for Coca-Cola. The difference between the parties over the amount of Oliver's average monthly income is relatively insignificant, but the court defers on this disputed fact to Coca-Cola, the employer that wrote the paychecks, kept the records and that is in the better position to know what Oliver's salary was during the relevant time period. Coca-Cola not only quarrels slightly with Oliver over this beginning component of the calculation, but asserts that the Plan calls for it to deduct from 70% of the "Average Compensation" the total amount of Oliver's Social Security disability benefits in order to arrive at the monthly benefit. The pertinent language of the Plan reads as follows:

> Section 4.1: <u>Monthly Benefit</u>. The Participant who incurs a Disability will receive a monthly benefit in an amount equal to 60 percent of his Average Compensation, reduced to account for disability benefits payable from other sources, as required under Section 4.2.

>Section 4.2:  <u>Offset for Other Disability Benefits</u>
>
>(a)  <u>Reduction in Disability Benefit</u>.  The monthly Disability Benefit payable from this Plan to the Participant who receives disability benefits from any source described in Subsection (b) will be reduced as necessary so that the total of his monthly Benefit from this Plan equals no more than the following amount:
>
>>(1)  70 percent of his Average Compensation as calculated without applying the $200,000 (indexed) limitation described in Section 1.4,
>>
>>minus
>>
>>(2)  the amount of his monthly disability benefits payable from all other sources;
>
>provided that the difference will not exceed 60 percent of his Average Compensation as limited by the $200,000 (indexed) limitation described in Section 1.4; and provided further that the offset for other disability benefits will not serve to reduce the Disability Benefit under this Plan to an amount less than 60 percent of the Participant's Average Compensation as limited.
>
>(b)  <u>Sources of Offset Benefits</u>.  Disability benefits which are payable under other programs to which the Employer has contributed, and which will be offset against the Participant's Disability Benefit, include the following:
>
>>(1)  Primary Social Security disability benefits.

The above-quoted reference to "the $200,000 limitation" has no relevance to the computation of Oliver's benefit.  Coca-Cola, speaking through Ms. Gilbreath's affidavit, says:

>Mr. Oliver's average compensation as defined in the Plan is $4,081.46.  Upon information and belief, Mr. Oliver's monthly Social Security Disability benefit is $1,458.00.

3

> Applying these figures under Coca-Cola's normal practice, which is to subtract monthly Social Security Disability benefits from 70% of Average Compensation, Mr. Oliver's monthly benefit from the Plan would be $1,399.02. Assuming the monthly benefit was payable for sixty-six and one-half (66.5) months (from April 18, 2000 through October 31, 2005) the total amount of past benefits due from the Plan would be $93,034.83.
>
> The Committee has never received a claim that Section 4.2 does not permit benefits to be offset when the participant is also receiving Social Security Disability benefits, and has never had the opportunity to consider the issue with respect to any participant's claim for benefits, including Mr. Oliver's claim for benefits.

Coca-Cola argues that unless its interpretation and methodology for computing Oliver's benefits is adopted by the court, the issue of the proper construction of the applicable Plan language should be remanded to "the Committee", which, according to Coca-Cola, is given the exclusive, discretionary authority to construe the Plan, and has not yet been given that opportunity.

There are several things wrong with Coca-Cola's argument.  An initial problem comes as a result of the fact that the Plan, as last amended, now gives the final discretionary authority to Broadspire, the "claims administrator" who morphed into the "plan administrator" while this dispute was going on.  Broadspire is the other defendant.  It has not responded to the court's memorandum opinion of October 21, 2005.  Which shell is the pea now under? Second, if the court was correct on October 21, 2005, when it reviewed the benefits denial *de novo* on the assumption that Broadspire was the *de facto* final decision-maker without having the

complete discretionary authority recognized in *Firestone Tire v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989), it would be entirely inconsistent of the court to remand the dispute to another entity, to which deference may or may not be owed upon any subsequent judicial review, especially when the issue is simply one of construing a contract, something courts do routinely and often. Whether "the Committee", or Broadspire, or Coca-Cola is capable of fairly construing a contract that Coca-Cola drafted and that Ms. Gilbreath, in a classic prejudgment of the issue, says has already been consistently construed to mean what Coca-Cola now says it means, is a question this court will only answer implicitly, that is, by proceeding to decide the dispute over the meaning of the above-quoted Plan language in light of the facts of this case.

The court starts with the rule of construction holding that all words in a contract are to be given meaning. In this case, the words "**and provided further that the offset for other disability benefits will not serve to reduce the Disability Benefit under this Plan to an amount less than 60 per cent of the Participant's Average Compensation as limited**" must be given meaning. They seem to mean what they say. A complementary rule is that any ambiguity in a contract is to be resolved against the draftsman. Oliver did not draft his Plan. It is not only understandable why Oliver reads the Plan language to entitle him to no less than 60% of his "Average Compensation", but it is hard to understand why other Plan

participants have not contested Coca-Cola's self-serving and erroneous interpretation of the language of Section 4.2, which Coca-Cola has not sought to explain to the court except by telling it what its standard claims practice has been. Oliver may be the first Plan participant to question Coca-Cola's interpretation, but he undoubtedly will not be the last. If Coca-Cola wants to deduct **all** disability payments from other sources from 70% of the "Average Compensation", ignoring the "60%" language, it needs to go back to the drafting table. Construing this less than perfect language against the drafter, the intent here must be to place a **floor** of 60% of "Average Compensation" on the monthly benefit. Coca-Cola's strained interpretation would lead to the elimination of its disability obligation entirely if a participant's Social Security payment and payments from other listed sources are more than 60% of his "Average Compensation".

The only remaining dispute is over prejudgment interest. Oliver insists on 18% per annum as the proper rate, relying on this court's opinion, affirmed in *Florence Nightingale Nursing Service v. Blue Cross*, 41 F. 3d 1476 (11th Cir. 1995). This court there awarded the assignee of ERISA medical benefits 18% per annum on those benefits from the dates they were due. In that case, the most nearly analogous interest rate was the 18% per annum found at Ala. Code § 27-1-17, a statute that is peculiar to unpaid health benefits and to no other types of monetary obligations. The Plan

in the instant case provides for **disability** benefits and not for **health** benefits. This makes a reference to Ala. Code § 7-1-17 inapposite. Still, the absence of any reference in the Plan or in ERISA itself to interest, or to an interest rate, leaves the court needing to (1) decide whether interest should be awarded, and, (2) if so, the appropriate rate under the state law that governs the contract.

Coca-Cola begins with the hopeful argument that wrongfully withheld ERISA benefits do not bear interest. This proposition is fraught with the danger of inciting ERISA benefits decision-makers, most of whom operate under some degree of a conflict-of-interest, not to pay claims until a final judgment is entered against them, or at least, to take their time in processing claims. Just think of the money plan sponsors and insurers can save if no interest accrues until after a judgment is entered. This court rejects Coca-Cola's argument, just as the district court did in its well reasoned opinion in *Cheald Life Ins. Co. Of North America*, 330 F. Supp. 2d 1347 (N.D. Ga. 2004). There, the court recognized both that the contrary off-hand suggestion in *Flint v. ABB, Inc.*, 337 F. 2d 1326 (11th Cir. 2003), was not a part of the holding in that case, and that, if taken seriously, the *Flint* opinion would purport to overrule several prior unequivocal Eleventh Circuit cases that recognize the right of the trial court to impose prejudgment interest on due and unpaid ERISA benefits. One of those earlier

Eleventh Circuit expressions on this very subject is *Florence Nightingale, supra*, in which this very court was affirmed after it awarded interest on ERISA benefits.

The question, then, is not whether prejudgment interest can be awarded, but whether interest should, in this case, be awarded, and if so, at what rate. While this court may some day run across an ERISA benefits case in which prejudgment interest should not be awarded, this case is not it. Because this Plan contains language providing that the law of Georgia governs, the court looks to the interest rate in Georgia, and, with the help of Coca-Cola's brief, finds it at Ga. Code Ann. § 7-4-12, which provides:

> (a) All judgments in this state shall bear annual interest upon the principal amount recovered at a rate equal to the prime rate as published by the Board of Governors of the Federal Reserve System, as published in statistical release H.15 or any publication that may supercede it, on the date that the judgment is entered plus 3 percent.

Statistical release H.15 reflects that the Federal Reserve prime rate as of today is 7%. By adding 3%, the court arrives at the interest rate under the law of Georgia applicable to Oliver's past due contract benefits, namely, an annual rate of 10%. The law of Georgia establishes prejudgment interest at the same rate as post-judgment interest.

Using the facts outlined above, the court computes the amount of the judgment as follows: Sixty percent of $4,081.46 is $2,448.88. This constitutes Oliver's monthly disability payment.

It went unpaid for 66.5 months. This means that the unpaid principal is $162,850.52. Interest at 10% per annum on each of the 66.5 past due payments totals $45,799.16. Adding interest to principal leads to a judgment in the sum of $208,649.68. A separate final judgment in that amount will be entered.

DONE this 10th day of November, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE